Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| BERNARD DANIEL BRAVER<br><br>**Recurrido**<br><br>V.<br><br>TAMARA RAMÍREZ DOMENECH<br><br>**Peticionaria** | TA2026CE00625<br><br>consolidado con<br><br>TA2026CE00638 | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de Carolina<br><br>Civil Núm. BY2022RF01328<br><br>Sobre: Filiación – Reconocimiento Voluntario Tardío |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

**Hernández Sánchez, Juez Ponente**

### RESOLUCIÓN

En San Juan, Puerto Rico, a 4 de junio de 2026.

El 17 de mayo de 2026, la señora Tamara Ramírez Domenech (señora Ramírez o la peticionaria) compareció ante nos mediante un *Recurso de Certiorari Enmendado* en el caso núm. TA2026CE00625, mediante el cual solicitó la revisión de una *Orden* emitida y notificada el 17 de febrero de 2026 por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI). En el referido dictamen, el TPI acogió las recomendaciones de la Coordinadora de Coparentalidad y ordenó a las partes cumplir estrictamente con estas, así como con cualquier recomendación futura emitida por dicha funcionaria. Además, dispuso que ambas partes recibieran terapia individual dirigida a atender asuntos personales, emocionales o relacionales que incidieran en la dinámica coparental. Igualmente, autorizó a la Dra. Jovet Sánchez y a los demás profesionales tratantes a compartir información con la Coordinadora de Coparentalidad sobre el progreso terapéutico de la menor, incluyendo discusiones de caso, con el propósito de salvaguardar su mejor bienestar.

Por otro lado, el 19 de mayo de 2026, la peticionaria presentó un *Recurso de Certiorari* en el caso núm. TA2026CE00638, mediante el cual solicitó la revocación de tres (3) Órdenes emitidas por el TPI. En la primera, emitida y notificada el 11 de mayo de 2026, el TPI declaró No Ha Lugar la solicitud de la señora Ramírez para desglosar los anejos que acompañaron la *Urgente Solicitud al amparo de la Ley 70, Solicitud de Custodia Monoparental* [...] presentada por el Sr. Bernard Daniel Braver (señor Braver o el recurrido). A esos efectos, indicó que consideraría dichos anejos como parte de la evidencia a presentarse en la vista evidenciaria señalada para el 3 de julio de 2026.

Mediante la segunda *Orden*, emitida el 11 de mayo de 2026 y notificada el 12 de mayo de 2026, el TPI expresó que no consideraría alegaciones presentadas mediante mociones y reiteró que atendería la controversia a base de la evidencia que se desfilara en la vista evidenciaria pautada para el 3 de julio de 2026. Por último, en la *Orden* emitida y notificada el 14 de mayo de 2026, el TPI declaró No Ha Lugar la *Moción en Solicitud de Orden Dirigida a la Unidad Social* presentada por la peticionaria. En esa ocasión, el TPI indicó que, durante la vista en sus méritos, determinaría: (1) cuál de las partes incurrió en interferencia con las relaciones filiales; (2) quién ostentaría la custodia física de la menor; y (3) la manera en que se establecerían, de proceder, las relaciones filiales.

A tenor con la Orden Administrativa Núm. DJ 2019-316, según enmendada por la Orden Administrativa Núm. DJ 2019-316A que emitió la Jueza Presidenta del Tribunal Supremo, la Hon. Maite Oronoz Rodríguez, y a tenor con la Orden Administrativa Núm. TA 2021-092 que emitió el Juez Administrador del Tribunal de Apelaciones, Hon. Roberto Sánchez Ramos, ordenamos la consolidación del caso núm. TA2026CE00638, con el de mayor antigüedad, el caso núm. TA2026CE00625.

Por los fundamentos que expondremos a continuación, **denegamos** los recursos de epígrafe presentados.

I.

El 31 de julio de 2023, el señor Braver presentó una *Demanda* sobre filiación contra la señora Ramírez.[1] En síntesis, indicó que sostuvo una relación sentimental con la señora Ramírez, de la cual nació la menor. Expresó que, aunque inicialmente mantuvo comunicación con la peticionaria y contacto con la niña, posteriormente se interrumpió toda comunicación, lo que le había impedido establecer legalmente su paternidad y mantener una relación con su hija.

A esos efectos, solicitó al Tribunal que declarara su filiación conforme a las disposiciones del Código Civil de Puerto Rico sobre filiación por vínculo genético y, de ser necesario, ordenara la práctica de pruebas científicas de paternidad. Además, requirió que se ordenara la inscripción de la menor en el Registro Demográfico con su apellido, se establecieran los derechos y deberes inherentes a la patria potestad y se fijaran relaciones paterno filiales de manera escalonada, incluyendo videollamadas y visitas presenciales progresivas.

En respuesta, el 11 de octubre de 2023, la señora Ramírez presentó su *Contestación a la Demanda y Reconvención.*[2] En esta, negó varias de las alegaciones del señor Braver y sostuvo, específicamente, que este inicialmente no aceptó el embarazo, al punto de indicarle que no tuviera a la menor, y que tampoco estuvo presente durante gran parte del proceso de gestación. Además, alegó que, el señor Braver conoció a la menor por primera vez cuando esta tenía entre catorce (14) y quince (15) meses de edad. Asimismo, afirmó que se sintió acosada y hostigada por este, razón por la cual

---

[1] *Véase*, Entrada Núm. 1, SUMAC TPI.
[2] *Véase*, Entrada Núm. 14, SUMAC TPI.

tuvo que remitirle, mediante abogado, una carta de cese y desista, tras lo cual cesó la comunicación entre las partes.

Asimismo, adujo que el señor Braver decidió no asumir responsabilidades relacionadas con la menor desde que conoció del embarazo, lo que le ocasionó sufrimiento durante la gestación, proceso que enfrentó prácticamente sola. Añadió que el recurrido no estuvo presente al momento del nacimiento y que posteriormente incurrió en conductas amenazantes y de maltrato emocional hacia ella. De igual forma, expresó preocupación por el comportamiento errático del señor Braver y el posible efecto que ello pudiera tener sobre la menor.

Respecto a las relaciones paterno filiales solicitadas, indicó que, una vez culminara el proceso de filiación, interesaba que dichas relaciones fueran supervisadas, dado que la menor apenas había interactuado con el recurrido y su familia. A esos efectos, manifestó preocupación por el bienestar emocional de la menor y solicitó la intervención de la Unidad Social del Tribunal para asegurar que el proceso de integración fuese seguro y beneficioso para esta. Asimismo, expresó disposición a dialogar sobre comunicaciones mediante Facetime, tomando en consideración la edad de la menor y el hecho de que el señor Braver reside en Estados Unidos.

Ahora bien, por vía de reconvención, solicitó que, una vez se determinara judicialmente la filiación, se refiriera el asunto ante un Examinador(a) de Pensiones Alimentarias para establecer alimentos en beneficio de la menor. Asimismo, solicitó un referido a la Unidad Social del Tribunal para realizar un estudio y emitir recomendaciones sobre las relaciones paternofiliales.

Así las cosas, el 20 de octubre de 2023, el señor Braver presentó una *Réplica a Reconvención*.[3] Sostuvo que la señora

---

[3] *Véase*, Entrada Núm. 17, SUMAC TPI.

Ramírez no negó expresamente su paternidad sobre la menor, por lo que solicitó que se ordenara de inmediato la filiación y la correspondiente modificación del certificado de nacimiento para incluir su nombre y apellido. Asimismo, argumentó que la solicitud de pensión alimentaria no procedía en esa etapa del pleito, debido a que aún no se había determinado la filiación. No obstante, expresó su intención de cumplir con sus deberes alimentarios una vez culminara el procedimiento. Finalmente, señaló que las reclamaciones de alimentos usualmente se presentaban mediante procedimientos independientes y que estas podrían tramitarse luego de establecerse formalmente la filiación y realizarse el cambio en el certificado de nacimiento.

Celebrada la vista de filiación, el 1 de diciembre de 2023, el TPI emitió una *Sentencia* que se notificó el 4 de diciembre de 2023.[4] Expresó que, durante la vista celebrada, las partes informaron, por conducto de sus respectivas abogadas, haber alcanzado acuerdos para poner fin a las controversias del caso. Indicó que, entre las estipulaciones presentadas, las partes acordaron reconocer la paternidad del señor Braver y solicitar al Registro Demográfico la inscripción de la menor con el apellido del recurrido. Además, manifestó que las partes acordaron que las relaciones paternofiliales serían inicialmente supervisadas por la madre y se ampliarían de forma escalonada conforme al mejor bienestar de la menor. Por último, sostuvo que las partes estipularon comunicaciones semanales mediante Facetime, así como visitas mensuales presenciales del padre a Puerto Rico, sujetas a supervisión inicial y a acuerdos entre las partes respecto al lugar de encuentro y la ampliación de las relaciones.

---

[4] *Véase*, Entrada Núm. 28, SUMAC TPI.

Así pues, luego de exponer normas jurisprudenciales relacionadas con la filiación y el reconocimiento voluntario, declaró Ha Lugar la *Demanda* de filiación, acogió y aprobó los acuerdos alcanzados entre las partes y declaró a la menor hija del señor Braver para todos los fines y efectos de ley. Además, ordenó la inscripción de la menor en el Registro Demográfico de Puerto Rico con el apellido del recurrido.

Tras numerosos trámites procesales que no discutiremos, el 11 de febrero de 2026, la Coordinadora Parental designada por el Centro OASIS, la Lcda. Ingrid Rodríguez Cosme, presentó una *Moción Informativa Urgente*.[5] Allí, sostuvo que, compareció en cumplimiento de la *Orden* emitida el 13 de noviembre de 2025, mediante la cual el TPI dispuso que todos los asuntos relacionados con las relaciones filiales fueran atendidos a través del proceso de Coordinación Parental. En ese contexto, informó el estado del proceso, los asuntos operacionales identificados y varias recomendaciones dirigidas a proteger el bienestar emocional de la menor.

Particularmente, sostuvo que ambas partes comenzaron el proceso de talleres y sesiones de coordinación parental el 17 de noviembre de 2025 y que, desde entonces, participaron consistentemente en los talleres programados. Además, indicó que el 21 de diciembre de 2025 realizó una observación de la dinámica de relaciones filiales entre la menor, el padre y la abuela paterna, y que posteriormente sostuvo una discusión del caso con la Dra. Jovette Sánchez, psicóloga que brinda servicios a la menor.

Asimismo, señaló que desde el 18 de enero de 2026 comenzó a observar las videollamadas entre el padre y la menor, luego de identificarse falta de fluidez en las relaciones filiales. Como

---

[5] *Véase*, Entrada Núm. 333, SUMAC TPI.

resultado de dichas observaciones, identificó áreas que requerían fortalecimiento, incluyendo la facilitación de interacciones fluidas, el respeto a la espontaneidad relacional de la menor, el manejo de las transiciones y la validación consistente de ambas figuras parentales. También expresó que había identificado acercamientos reiterados por parte de la madre dirigidos a cuestionar y dirigir el proceso de coordinación parental y las relaciones paternofiliales, por lo que aclaró que la conducción del proceso correspondía a la Coordinadora Parental conforme a la Orden del Tribunal.

Además, informó que el 6 de febrero de 2026 se celebró una reunión entre las partes para intentar alcanzar acuerdos relacionados con las relaciones filiales, aunque no lograron consenso. Ante ello, formuló varias determinaciones y recomendaciones, entre ellas: extender el tiempo de las relaciones filiales a ocho (8) horas durante determinados fines de semana; recomendar que las videollamadas fueran supervisadas clínicamente por un término inicial de tres (3) meses; establecer fechas tentativas para futuras relaciones filiales durante el año 2026; y orientar a ambas partes respecto a la necesidad de informar decisiones importantes relacionadas con la menor, incluyendo viajes, asuntos médicos y educativos.

Asimismo, recomendó reorientar a la madre, con apoyo del Tribunal, sobre la importancia de validar consistentemente la figura paterna y abstenerse de emitir mensajes o conductas que pudieran generar confusión o conflictos de lealtad en la menor. Asimismo, determinó que ambas partes iniciaran terapia individual para atender asuntos que pudieran afectar la dinámica coparental y recomendó que la Coordinadora continuara recibiendo información general sobre el progreso terapéutico de las partes y de la menor en aspectos relacionados con su bienestar emocional y relacional. Finalmente, destacó la importancia de fomentar y proteger el vínculo

entre la menor y su padre, y advirtió que la interferencia, desvalorización o invalidación de la figura paterna podía tener efectos adversos en el desarrollo emocional de la menor, según la literatura clínica citada en el escrito.

Evaluada esta moción, el 17 de febrero de 2026, el TPI emitió y notificó una *Orden*.[6] En esta, acogió las recomendaciones de la Coordinadora de Coparentalidad y ordenó a las partes cumplir estrictamente con estas, así como con cualquier recomendación futura emitida por dicha funcionaria. Además, dispuso que ambas partes debían recibir terapia individual dirigida a atender asuntos personales, emocionales o relacionales que incidieran en la dinámica coparental. Igualmente, autorizó a la Dra. Jovette Sánchez y a los demás profesionales tratantes a compartir información con la Coordinadora de Coparentalidad sobre el progreso terapéutico de la menor, incluyendo discusiones de caso, con el propósito de salvaguardar su mejor bienestar.

Inconforme con esta *Orden*, el 27 de febrero de 2026, la peticionaria presentó una Urgente *Moción de Reconsideración*.[7] Alegó que las recomendaciones excedían las facultades conferidas a la Coordinadora Parental, pues esta únicamente estaba autorizada a implementar las relaciones paternofiliales provisionales ya establecidas y rendir informes al Tribunal, no a modificarlas, ampliarlas ni recomendar pernoctes o cambios sustanciales en el plan relacional. Específicamente, sostuvo que la Coordinadora recomendó, entre otras cosas, ampliar las relaciones filiales a ocho (8) horas, progresar hacia pernoctes, establecer fechas futuras de relaciones, ordenar videollamadas supervisadas clínicamente, instruir a la madre sobre la validación de la figura paterna, requerir notificación de asuntos médicos, educativos y viajes, así como

---

[6] *Véase*, Entrada Núm. 336, SUMAC TPI.
[7] *Véase*, Entrada Núm. 341, SUMAC TPI.

recomendar terapia individual para ambas partes. Señaló que el Tribunal acogió dichas recomendaciones sin concederle oportunidad de expresarse dentro del término dispuesto por la Regla 8.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 8.4, lo que, según alegó, constituyó una violación al debido proceso de ley.

Además, argumentó que las recomendaciones de la Coordinadora eran incompatibles con la *Resolución Interlocutoria* del 11 de agosto de 2025, la cual estableció un plan provisional de relaciones paternofiliales basado en un informe social y delimitó las funciones de la Coordinadora Parental a implementar dichas relaciones y reportar al Tribunal. Citó las guías de la AFCC sobre coordinación parental para sostener que un coordinador no podía modificar custodia ni alterar sustancialmente el plan parental sin autorización judicial expresa o consentimiento de las partes.

Por otro lado, expuso varios incidentes relacionados con las videollamadas y relaciones filiales. Alegó que, la Trabajadora Social Forense había recomendado permitir que la menor pudiera retirarse temporalmente de las videollamadas y evitar forzar la interacción, mientras que posteriormente la Coordinadora instruyó a la madre a mantener a la menor frente a la cámara y no permitirle terminar la llamada. También alegó que la Coordinadora minimizó preocupaciones sobre la transición a pernoctes y sobre la barrera idiomática entre el padre y la menor, indicando que "ellos se las arreglen".

Expresó que la menor aún presentaba resistencia emocional y ansiedad en las interacciones con el padre, y que una perito consultora, la Dra. Yaritza M. López Robledo, concluyó que una transición inmediata hacia pernoctes podría afectar la salud emocional y psicológica de la menor. Además, alegó que las recomendaciones fueron emitidas sin haberse completado las

evaluaciones psicológicas ni el informe final de la Unidad Social ordenados por el Tribunal.

Finalmente, solicitó que el Tribunal reconsiderara la orden emitida, suspendiera inmediatamente la implementación de las recomendaciones relacionadas con pernoctes y ampliación de relaciones filiales, y limitara el asunto al proceso evaluativo de la Unidad Social hasta culminar el informe correspondiente, todo ello en protección del bienestar emocional y psicológico de la menor.

El 24 de marzo de 2026, el señor Braver presentó su *Oposición a "Urgente Moción de Reconsideración"*.[8] En esencia, solicitó que se declarara No Ha Lugar la reconsideración presentada por la madre y sostuvo que las recomendaciones emitidas por la Coordinadora Parental fueron adoptadas válidamente por el Tribunal. Como fundamento principal, argumentó que mediante órdenes emitidas el 8 de octubre, 20 de octubre y 14 de noviembre de 2025, el Tribunal dispuso que todos los asuntos relacionados con la implementación de las relaciones paternofiliales debían atenderse a través de la figura de la Coordinadora de Coparentalidad. Señaló que dichas órdenes no fueron impugnadas y, por tanto, constituían la ley del caso, por lo que la Coordinadora actuó dentro de las facultades previamente conferidas por el Tribunal al emitir sus recomendaciones.

Asimismo, puntualizó que la Orden del 17 de febrero de 2026, mediante la cual el Tribunal acogió las recomendaciones de la Coordinadora Parental, reiteró determinaciones anteriores y no vulneró el debido proceso de ley de la madre. Alegó que en los asuntos de custodia y relaciones paternofiliales el Tribunal poseía amplias facultades, en ejercicio de su función de *parens patriae,* para tomar medidas dirigidas a proteger el bienestar de la menor y

---

[8] *Véase,* Entrada Núm. 351, SUMAC TPI.

adoptar recomendaciones de los profesionales que intervenían en el caso.

Esbozó que la Coordinadora Parental intervino durante varios meses con la familia, entrevistó profesionales relacionados con la menor, observó relaciones paternofiliales presenciales y videollamadas, y posteriormente presentó una moción informativa recomendando, entre otras cosas, ampliar gradualmente las relaciones filiales, supervisar videollamadas, establecer un calendario de visitas y que ambos progenitores recibieran terapia individual. Argumentó que tales recomendaciones fueron precisamente eso: recomendaciones sometidas al criterio del Tribunal, quien tenía facultad para adoptarlas.

Por otro lado, sostuvo que la madre había mantenido un patrón de objeciones y obstáculos respecto a las relaciones paternofiliales. En apoyo de ello, mencionó incidentes procesales en los que, según afirma, la madre se opuso a solicitudes del padre relacionadas con comunicaciones o visitas a la menor.

En cuanto a la opinión atribuida a la Dra. Yaritza M. López Robledo, planteó que esta no debía ser considerada por el Tribunal porque, según se alegó, esta no había evaluado a la menor, no había tenido contacto profesional directo y sustancial con ella ni había realizado una evaluación formal del caso. Por ello, expuso que cualquier opinión emitida carecía de la base clínica necesaria y contravenía las normas éticas citadas en el escrito.

Finalmente, solicitó que se mantuviese vigente la *Orden* del 17 de febrero de 2026, que se reconociera que la Coordinadora Parental actuó dentro de las facultades conferidas por el Tribunal, que se rechazaran los planteamientos de la reconsideración, que se requiriera información adicional a la psicóloga de la menor sobre el tratamiento brindado y que se tomaran medidas para evitar futuras interferencias con las relaciones paternofiliales.

Examinadas las posturas de ambas partes, el 16 de abril de 2026, el TPI emitió una *Orden* que se notificó el 17 de abril de 2026 mediante la cual denegó la solicitud de reconsideración presentada por la peticionaria.[9] Además, reiteró que acogía las recomendaciones de la Coordinadora de Coparentialidad.

Posteriormente, el 30 de abril de 2026, el recurrido presentó una *Urgente Solicitud al amparo de la Ley 70, Solicitud de Custodia Monoparental* [...].[10] Alegó que existía un patrón de enajenación parental e interferencia indebida en la relación paternofilial entre él y su hija menor. Sostuvo que las actuaciones de la señora Ramírez habían impuesto obstáculos constantes y significativos que limitaban el desarrollo de una relación saludable, estable y afectiva con la menor. Asimismo, afirmó que, de no intervenir el Tribunal mediante medidas cautelares inmediatas, existía un riesgo real e inminente de daño irreparable en la relación entre padre e hija.

Expresó que la intervención judicial era urgente para proteger el derecho de la menor a mantener una relación estrecha, continua y significativa con su padre y para detener un supuesto patrón progresivo de daño emocional y maltrato psicológico hacia la niña. A esos efectos, sostuvo que desde el inicio del caso la señora Ramírez había mantenido una conducta dirigida a obstaculizar y deteriorar la relación paternofilial. Entre otras cosas, indicó que la señora Ramírez solicitó relaciones paternas supervisadas y restringidas sin fundamento fáctico o jurídico y que posteriormente presentó tres solicitudes de órdenes de protección —dos al amparo de la Ley 57 y una por violencia doméstica— las cuales, según alegó, no prosperaron.

Además, adujo que la madre incurría en maltrato psicológico hacia la menor, provocándole confusión y conflictos de lealtad. En

---

[9] *Véase*, Entrada Núm. 361, SUMAC TPI.
[10] *Véase*, Entrada Núm. 372, SUMAC TPI.

apoyo de ello, relató múltiples expresiones que, según sostuvo, la menor verbalizaba durante los periodos de relación paternofilial, incluyendo manifestaciones en las que negaba que él fuera su padre o expresaba que su madre no quería que tuviera contacto con él y su familia. También describió un incidente en el que la menor pidió espontáneamente que el señor Braver la cargara sobre sus hombros, pero luego reaccionó llorando y gritando al momento de ser recogida por la madre.

Finalmente, sostuvo que estas alegaciones debían evaluarse dentro del historial procesal del caso, el cual, según indicó, reflejaba un patrón continuo de litigación y señalamientos infundados por parte de la madre que incidían en la dinámica familiar y en el bienestar de la menor. Para sostener sus alegaciones, el recurrido acompañó su moción con once (11) documentos anejos.

Ante ello, el 11 de mayo de 2026, la señora Ramírez presentó una *Solicitud de Desglose.*[11] En esta, solicitó el desglose de los anejos presentados junto a la moción del señor Braver. Alegó que dichos documentos fueron preparados por terceros contratados por el recurrido, por lo que no podía darse por cierto su contenido ni conferirles validez. Además, sostuvo que los anejos constituían prueba de referencia.

Asimismo, argumentó que la presentación de prueba no podía realizarse mediante la simple inclusión de documentos anejos a un escrito, sino conforme al procedimiento dispuesto en las Reglas de Evidencia. A esos efectos, alegó que el recurrido incumplió con las normas evidenciarias aplicables y que la permanencia de dichos documentos en el expediente podría influenciar indebidamente el estudio social que se encontraba en curso, en violación al debido proceso de ley.

---

[11] *Véase*, Entrada Núm. 376, SUMAC TPI.

Atendida la solicitud, el 11 de mayo de 2026, el TPI emitió y notificó una *Orden* declarando No Ha Lugar la solicitud de la señora Ramírez para desglosar los anejos que acompañaron la *Urgente Solicitud al amparo de la Ley 70, Solicitud de Custodia Monoparental* [...] presentada por el señor Braver.[12] A esos efectos, indicó que consideraría dichos anejos como parte de la evidencia a presentarse en la vista evidenciaria señalada para el 3 de julio de 2026.

Ese mismo día, a saber, el 11 de mayo de 2026, la señora Ramírez presentó una *Solicitud de Extension de Términos*.[13] Allí, solicitó una prórroga para cumplir con la Orden del Tribunal de expresarse en torno a la *Urgente Solicitud al amparo de la Ley 70, Solicitud de Custodia Monoparental* [...] que presentó el recurrido. Alegó que el escrito al que debía responder era extenso y contenía numerosas alegaciones, cuyo análisis aún no había concluido. Además, indicó que necesitaba discutir el contenido del escrito con su representada para contar con un panorama completo de los hechos y poder preparar una respuesta responsable.

Asimismo, informó que su representación legal tenía múltiples compromisos profesionales, incluyendo la preparación de escritos sujetos a términos jurisdiccionales, comparecencias a vistas y deposiciones, así como la preparación de un recurso ante el Tribunal de Apelaciones, lo que había limitado el tiempo disponible en la oficina. Añadió que también tenía compromisos personales relacionados con la graduación de cuarto año de su hija. Por estas razones, sostuvo que le resultaba imposible cumplir dentro del término concedido y solicitó, de buena fe, una extensión hasta el 12 de junio de 2026 para presentar su escrito.

Ante ello, el 11 de mayo de 2026, el TPI emitió una *Orden* que se notificó el 12 de mayo de 2026 en la cual expuso que no iba a

---

[12] *Véase*, Entrada Núm. 377, SUMAC TPI.
[13] *Véase*, Entrada Núm. 378, SUMAC TPI.

considerar alegaciones expuestas en las mociones.[14] Reiteró que consideraría la evidencia que se presentara en la vista evidenciaria del 3 de julio de 2026.

Por otro lado, el 13 de mayo de 2026, la peticionaria presentó una *Moción en Solicitud de Orden Dirigida a la Unidad Social*.[15] Expuso que el 1 de mayo de 2025 el Tribunal ordenó a la Unidad Social de Familia y Menores realizar un estudio social sobre las relaciones filiales, cuyo informe fue presentado el 30 de julio de 2025. Indicó que, posteriormente, durante la vista de lectura de informe celebrada el 11 de agosto de 2025, el Tribunal ordenó que dicho informe fuera complementado mediante la consideración de una evaluación psicológica y entrevistas a los profesionales de salud mental que atendían o habían atendido a las partes y a la menor.

Sostuvo que la trabajadora social solicitó una prórroga hasta el 10 de diciembre de 2025 para completar el informe, solicitud que fue concedida. Sin embargo, alegó que la trabajadora social enfrentó dificultades atribuidas al señor Braver para coordinar las entrevistas requeridas, lo que motivó la presentación de una moción informando dichas gestiones y una orden del Tribunal para que se notificara cuando pudiera concretarse una reunión con él. Además, señaló que presentó una moción para informar al Tribunal sobre los contratiempos que afectaban el proceso, a lo que el Tribunal respondió que el asunto permanecía bajo la consideración de la Unidad Social.

Expresó que, a pesar de que habían transcurrido varios meses y de que la trabajadora social ya entrevistó a las partes y a la menor, el informe social complementario aún no había sido presentado ni notificado a las partes. Añadió que recientemente el Tribunal acogió unas determinaciones de la Coordinadora de Coparentalidad que

---

[14] *Véase*, Entrada Núm. 379, SUMAC TPI.
[15] *Véase*, Entrada Núm. 380, SUMAC TPI.

ampliaban lo recomendado originalmente en el informe social, sin contar todavía con la información suplementaria que el propio Tribunal había requerido. Por ello, solicitó que se ordenara a la Unidad Social informar el estado del informe complementario o, en la alternativa, que se le concediera un plazo final de treinta (30) días para presentarlo y notificarlo.

En respuesta, el 14 de mayo de 2026, el TPI emitió y notificó una *Orden* declarando No Ha Lugar la *Moción en Solicitud de Orden Dirigida a la Unidad Social* presentada por la peticionaria.[16] En esa ocasión, el TPI indicó que, durante la vista en sus méritos, determinaría: (1) cuál de las partes incurrió en interferencia con las relaciones filiales; (2) quién ostentaría la custodia física de la menor; y (3) la manera en que se establecerían, de proceder, las relaciones filiales.

Inconforme con la *Orden* que el TPI emitió y notificó el 17 de febrero de 2026, el 17 de mayo de 2026, la peticionaria presentó el caso núm. TA2026CE00625 y formuló los siguientes señalamientos de error:

> **ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL ACOGER DETERMINACIONES DE UNA COORDINADORA DE COPARENTALIDAD SOBRE RELACIONES PATERNOFILIALES Y OTROS ASUNTOS QUE REBASAN LAS FACULTADES DE DICHA FIGURA, SIN SIQUIERA ESCUCHAR A LA COMPARECIENTE. AL ASÍ ACTUAR ABUSÓ DE SU DISCRECIÓN Y VIOLÓ EL DEBIDO PROCESO DE LEY.**
>
> **ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL ACOGER DETERMINACIONES DE UNA COORDINADORA DE COPARENTALIDAD SOBRE RELACIONES PATERNOFILIALES Y OTROS ASUNTOS QUE REBASAN LAS FACULTADES DE DICHA FIGURA, SIN SIQUIERA CELEBRAR UNA VISTA PARA ASEGURAR EL BIENESTAR DE LA MENOR. AL ASÍ ACTUAR ABUSÓ DE SU DISCRECIÓN Y VIOLÓ EL DEBIDO PROCESO DE LEY.**
>
> **ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL ACOGER DETERMINACIONES DE UNA COORDINADORA DE COPARENTALIDAD SOBRE RELACIONES PATERNOFILIALES Y OTROS ASUNTOS QUE REBASAN LAS FACULTADES DE DICHA FIGURA,**

---

[16] *Véase*, Entrada Núm. 381, SUMAC TPI.

**SIN REFERIR EL ASUNTO A LA UNIDAD SOCIAL QUE EN LA ACTUALIDAD ESTÁ LLEVANDO A CABO EL PROCESO INVESTIGATIVO REQUERIDO PARA SUPLEMENTAR EL INFORME SOCIAL INCONCLUSO; ES DECIR, SIN QUE MEDIARA UN INFORME SOCIAL QUE AVALE DICHA DETERMINACION. AL ASÍ ACTUAR ABUSÓ DE SU DISCRECIÓN Y VIOLÓ EL DEBIDO PROCESO DE LEY.**

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL ACOGER UNAS DETERMINACIONES DE UNA COORDINADORA DE COPARENTALIDAD QUE MODIFICAN UN PLAN DE RELACIONES PATERNOFILIALES, CUANDO LA FUNCIÓN DE DICHA COORDINADORA NO SE EXTIENDE A TAL EXTREMO Y SIN CONSIDERACION AL BIENESTAR DE LA MENOR. AL ASÍ ACTUAR ABUSÓ DE SU DISCRECIÓN Y VIOLÓ EL DEBIDO PROCESO DE LEY.**

Por otro lado, el 19 de mayo de 2026, la peticionaria presentó el caso núm. TA2026CE00638 mediante el cual impugnó las tres (3) órdenes emitidas por el TPI los días 11 y 14 de mayo de 2026 y formuló el siguiente señalamiento de error:

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL SEÑALAR UNA VISTA DE CUSTODIA MONOPARENTAL SIN LA POSICIÓN DE LA COMPARECIENTE A DICHA EXTENSA SOLICITUD DE CUSTODIA MONOPARENTAL, NEGANDO INCLUSO UNA EXTENSIÓN DE TÉRMINO PARA EXPRESARSE A LA COMPARECIENTE INDICANDO QUE NO CONSIDERARÁ SUS ALEGACIONES EN MOCIÓN, NEGANDO EL DESGLOSE DE PRUEBA QUE ACOMPAÑÓ LA SOLICITUD DE CUSTODIA MONOPARENTAL DEL RECURRIDO, CONSIDERANDO LA MISMA COMO EVIDENCIA, SIN MÁS, Y SIN REFERIR LA SOLICITUD A LA UNIDAD SOCIAL Y A SU VEZ AL INDICAR QUE SERÍA EL TRIBUNAL DE PRIMERA INSTANCIA, SIN CONSIDERACIÓN DEL INFORME DE LA UNIDAD SOCIAL NI DICHO PROCESO, QUIEN DETERMINARÍA SOBRE LAS RELACIONES PATERNO FILIALES Y CUSTODIA DE LA MENOR. LO ANTERIOR, AÚN CUANDO DICHO INFORME CONTINÚA PENDIENTE DE SUPLEMENTACIÓN SEGÚN ORDENADO POR DICHO FORO. DE ESA FORMA, EL TRIBUNAL DE PRIMERA INSTANCIA CONTINÚA ABUSANDO DE SU DISCRECIÓN Y VIOLANDO EL DEBIDO PROCESO DE LEY EN DETRIMENTO DEL BIENESTAR DE LA MENOR.**

Cabe precisar que, junto a ambos recursos, la peticionaria presentó una solicitud de auxilio de jurisdicción solicitando la paralización de los procedimientos ante el TPI hasta tanto atendiéramos las controversias ante nuestra consideración.

Evaluadas las solicitudes, el 19 de mayo de 2026, emitimos una *Resolución* declarándolas No Ha Lugar. Además, le concedimos al recurrido hasta el 29 de mayo de 2026 para presentar su postura en cuanto a ambos recursos. En cumplimiento con esta orden, el 29 de mayo de 2026, el señor Braver presentó sus respectivas oposiciones a ambos recursos en las cuales negó que el TPI cometiera los errores que la peticionaria le imputó. Con el beneficio de la comparecencia de ambas partes, procedemos a atender el asunto ante nos. *Veamos.*

## II.

El *certiorari* es el vehículo procesal extraordinario utilizado para que un tribunal de mayor jerarquía pueda corregir un error de derecho cometido por un tribunal inferior. *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023). Los tribunales apelativos tenemos la facultad para expedir un *certiorari* de manera discrecional. Íd., pág. 847. Esta discreción se define como "el poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *García v. Padró*, 165 DPR 324, 334 (2005). Asimismo, discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justa. Íd., pág. 335. Ahora bien, la aludida discreción que tiene este foro apelativo para atender un *certiorari* no es absoluta. Íd. Esto, ya que no tenemos autoridad para actuar de una forma u otra, con abstracción total al resto del derecho, pues ello constituiría abuso de discreción. Íd. Así, "el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad". Íd.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece que el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, será expedido por el Tribunal de Apelaciones cuando se

recurre de: (1) una resolución u orden bajo la Regla 56 (Remedios Provisionales) y la Regla 57 (*Injunction*) de las Reglas de Procedimiento Civil; (2) la denegatoria de una moción de carácter dispositivo y; (3) por excepción de: (a) decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales; (b) asuntos relativos a privilegios probatorios; (c) anotaciones de rebeldía; (d) casos de relaciones de familia; (e) casos que revistan interés público; y (f) cualquier otra situación en la que esperar a la apelación constituiría un fracaso irremediable de la justicia.

En otros términos, la Regla 40 del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 141, pág. 63, 215 DPR ____ (2025), enmarca los criterios que debe evaluar este tribunal al expedir un auto de *certiorari.* La aludida regla establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Ninguno de estos criterios es determinante por sí solo para el ejercicio de jurisdicción y tampoco constituyen una lista exhaustiva.

*García v. Padró,* supra, pág. 335. La norma vigente es que los tribunales apelativos podremos intervenir con las determinaciones discrecionales del Tribunal de Primera Instancia cuando este haya incurrido en arbitrariedad, craso abuso de discreción o en un error en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Pueblo v. Rivera Santiago*, 176 DPR 559, 581 (2009).

### III.

Luego de examinar la totalidad del expediente ante nuestra consideración, a la luz de los criterios de la Regla 40 del Tribunal de Apelaciones, *supra*, no identificamos razón por la cual este Foro deba intervenir con el dictamen recurrido. Ello, ya que no se configura ninguna de las situaciones que allí se contemplan. Recordemos que nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios en los que el TPI haya sido arbitrario, cometido un craso abuso de discreción o cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo. Reiteramos que en el recurso que aquí atendemos no se nos ha demostrado que haya alguno de estos escenarios.

### IV.

Por los fundamentos antes expuestos, ***denegamos*** ambos recursos.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones